UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BUDDY BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 09-cv-754 |
| CHICAGO POLICE DEPUTY CHIEF | ) | |
| JAMES KEATING et al., | ) | Judge John W. Darrah |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Buddy Bell ("Bell") filed suit against Defendants, Chicago Police Deputy Chief James Keating, Chicago Police Officers Carlos Mota and Patrick Murray, and the City of Chicago (collectively, "Defendants"), alleging claims for violations of his Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, among other claims. Count I (False Detention, Arrest, and Imprisonment under 42 U.S.C. § 1983) and Count VI (Malicious Prosecution) were tried before a jury. On December 9, 2010, the jury returned a verdict in favor of Defendants on Counts I and IV. Before the Court is Defendants' Bill of Costs, requesting that Bell be taxed $12,792.93 in costs pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d).[1]

---

[1] Bell requests that if a judgment for costs is entered, it be stayed until the final resolution of this case. (Br. at 1.) As set forth in the Court's Memorandum Opinion and Order of the same date, Bell's Motion for Resolution on Counts II and IV is denied. Thus, because there are no pending motions, the case has reached the point of final resolution.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 54(d)(1), costs, other than attorney's fees, should be allowed to the prevailing party. Fed. R. Civ. P. 54(d)(1). When ruling on a bill of costs, there is a strong presumption favoring the award of costs to the prevailing party. *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997). The burden is on the non-prevailing party to overcome this presumption. *Rivera v. City of Chicago*, 469 F.3d 631, 635 (7th Cir. 2006) (*Rivera*). Further, district courts enjoy wide discretion in determining and awarding reasonable costs. *Testa v. Vill. of Mundelein, Illinois*, 89 F.3d 443, 447 (7th Cir. 1996). Under Rule 54(d)(1), recoverable costs, as set forth in 28 U.S.C. § 1920, include: (1) fees of the clerk, (2) fees for transcripts, (3) fees for printing and witnesses, (4) fees for copies of papers necessarily obtained for use in the case, (5) docket fees, and (6) compensation of court-appointed experts and interpreters. 28 U.S.C. § 1902.

However, it should be noted that, under Rule 54(d), a court does not have "unrestrained discretion to tax costs to reimburse a winning litigant for every expense he has seen fit to incur. . . . [I]tems proposed by winning parties as costs should always be given careful scrutiny." *Farmer v. Arabian Am. Oil Co.,* 379 U.S. 227, 235 (1964). A prevailing party is entitled to recover costs only if: (1) the expenses are allowable under § 1920 and (2) the expenses are reasonable both in amount and necessity to the litigation. *Deimer v. Cincinnati Sub-Zero Prod., Inc.*, 58 F.3d 341, 345 (7th Cir. 1995).

## ANALYSIS

Bell argues that Defendants' costs should be denied based on his inability to pay, an argument that he raises for the first time in his Sur-Reply. (Dkt. No. 108 ¶ 1.)

Therefore, before examining Defendants' costs, a district court must make a threshold factual finding as to whether the losing party is "incapable of paying the court-imposed costs at this time or in the future." *Rivera*, 469 F.3d at 635 (citing *McGill v. Faulkner*, 18 F.3d 456, 459 (7th Cir. 1994)). Under the standard set forth by the Seventh Circuit in *Rivera*, the "burden is on the losing party to provide the district court with sufficient documentation to support a finding" that Bell is unable to pay. *Rivera*, 469 F.3d at 635. "This documentation should include evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses." *Id.* Bell is "required to show not only that []he [i]s incapable of paying court-ordered costs at the time they [are] imposed but also that []he will be incapable of paying them in the future." *Id.* at 636.

Bell has submitted only two documents in support of his inability to pay: his 2009 U.S. Individual Income Tax Return Form 1040A, which shows that his gross income was $14,644.47 but that he received a tax refund of $926.19 (Dkt. No. 108, Ex. 1) and a 2010 W-2 Wage and Tax Statement issued by North Shore Transit, Inc., which shows his wages were $11,741.77. (*Id.*) But the 2010 W-2 Form raises the question of whether Bell's wages from North Shore Transit was his only source of income in 2010. Furthermore, Bell has not submitted an affidavit or any documentary evidence of his assets or expenses. Nor has Bell provided any evidence that he "will be incapable of paying [Defendants] in the *future*." *Rivera*, 469 F.3d at 636 (emphasis added).

In *Rivera*, the Court of Appeals rejected a claim of indigence where plaintiff averred in an affidavit that she was a single mother of four children with a monthly income of $1,800, no real estate or other assets, and no source of child support payments

because the plaintiff "did not include any information regarding her monthly expenses" or "identify any basis for a finding that she was incapable of paying the city's costs at some point in the future." *Id.* Similarly, here, in light of Bell's failure to provide any evidence regarding his assets or a schedule of expenses, Bell has not satisfied his burden of overcoming the presumption, under Rule 54(d), that costs should be awarded to Defendants.

Turning to Defendants' Bill of Costs, Defendants seek the following costs: fees for the service of summons and subpoena ($797.88); deposition costs ($4,267.10);[2] and costs for exemplification and copies ($63.30). Additionally, Defendants seek reimbursement for $7,345.90 of "Other costs," which includes costs for criminal court transcripts ($485.10), deliveries ($90), hearing transcripts ($14.55) and trial exhibits ($6,756.25). (Dkt. No. 97.) Bell filed an objection to Defendants' Bill of Costs, and the parties were granted leave to file supplemental memoranda. (Dkt. Nos. 101, 105, 108, 112.) Each item of Defendants' Bill of Costs is examined in turn.

### Fees for Service of Summons and Subpoenas

Bell argues that fees for serving subpoenas on Donte Smith, Illinois Central School Bus, and North Shore Transit were not reasonable and necessary to the litigation. Fees for service of summons and subpoenas are recoverable pursuant to 28 U.S.C. § 1920(1). Bell challenges the costs associated with serving a subpoena upon Smith because Defendants served him at an unreliable address. (Dkt. No. 101 at 3.) In

---

[2] In their Reply, Defendants made concessions in response to Bell's arguments regarding attendance fees. Therefore, per Defendants' concessions, $318.75 has been deducted from Defendants' total deposition costs. (Dkt. No. 105 at 6.)

his answers to Defendants' interrogatories, Bell identified Smith as an individual that witnessed the events. (Dkt. No. 105, Ex. B.) Further, Defendants represent that they hired a private investigator to obtain Smith's address. (Dkt. No. 105 at 5.) Bell also argues that the subpoena of his employment records from North Shore Transit and Illinois Central School Bus were not reasonable because he did not claim lost wages as an expense. But Defendants assert that the records were subpoenaed for impeachment purposes at Bell's deposition and at trial. Bell has failed to overcome the presumption that the City is entitled to recover its costs of serving subpoenas on Smith, North Shore Transit, and Illinois Central School Bus. *See O'Neal v. Altheimer & Gray*, No. 99-cv-9706, 2002 WL 31109393, at *3 (N.D. Ill. Sept. 18, 2002).

*Fees for Depositions Transcripts and Subpoenas*

Bell argues that fees for serving subpoenas and deposition costs relating to Robert Schwartz, Andy Thayer, Officers Gilberto and Staggers, and Lieutenant Mack were not reasonable and necessary to the litigation. Costs for deposition transcripts "necessarily obtained for use in the case" are authorized by 28 U.S.C. § 1920(2). The "transcripts need not be absolutely indispensable in order to provide the basis of an award of costs; it is enough that they are reasonably necessary." *Barber v. Ruth*, 7 F.3d 636, 645 (7th Cir. 1993). The introduction of a deposition in a summary judgment motion or at trial is not a prerequisite for finding that it was necessary to take that deposition. *Cengry v. Fusibond Pipis Sys., Inc.*, 135 F.3d 455, 456 (7th Cir. 1998) ("*Cengry*") (quoting *Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995)).

Bell argues that the depositions of Thayer and Schwartz were not necessary because it was clear from trial that neither witness's testimony was relevant to the

5

litigation. But the proper inquiry is whether the deposition was "reasonably necessary" to the case *at the time it was taken*, not whether it was used in a motion or in court. *Cengry*, 135 F.3d at 456 (internal quotation omitted) (emphasis added). Bell identified Thayer in his answer to Defendants' interrogatories as an individual who witnessed the relevant events. (Dkt. No. 105, Ex. B.) Defendants assert that they learned from deposing Thayer that Schwartz was also present during the incident at issue on January 7, 2008. (*Id.* at 4.) Therefore, at the time Thayer and Schwartz's depositions were taken, they were reasonably necessary to the litigation (as were the costs of subpoena service on Thayer and Schwartz). The depositions of Officers Gilberto and Staggers and Lieutenant Mack were also reasonably necessary to the litigation. Officers Staggers and Lieutenant Mack were present during the events that took place on January 7, 2008; and Officer Gilberto was nearby when Mr. Bell was arrested. Therefore, at the time these depositions were taken, they were reasonably necessary to the litigation (as were the costs of subpoena service). Defendants' fees for deposition transcripts and service of subpoenas for Robert Schwartz, Andy Thayer, Officers Gilberto and Staggers, and Lieutenant Mack are issued.

### Fees for Exemplification and Copies of Papers

28 U.S.C. § 1920(4) provides for recovery of "fees for exemplification and the costs of making copies of any materials where copies are necessarily obtained for use in the case." Courts interpret this section to mean that photocopying charges for discovery and court copies are recoverable, but charges for copies made for attorney convenience are not. *See Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000); *McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1584 (7th Cir. 1990). Bell

does not object to Defendants' fees for copies. Defendants' copying charge of $0.15 per page is within the range courts in this district generally have found to be reasonable. *See, e.g., Harkins v. Riverboat Serv., Inc.*, 286 F. Supp. 2d 976, 982 (N.D. Ill. 2003). A review of Defendants' costs indicates that the copies were of documents used in the litigation; Defendants, therefore, are entitled to these costs.

*Other Costs*

With respect to Defendants' request for fees for certain court transcripts, 28 U.S.C. § 1920(2) provides for the recovery of costs for "fees for printed or electronically recorded transcripts necessarily obtained for use in the case." Bell does not dispute that the transcript from Bell's criminal trial relating to the ordinance violation was necessary to the litigation of his malicious prosecution claim. He argues, though, that two transcripts from criminal court status hearings were not necessary to the litigation. (Dkt. No. 108 at 3.) Defendants' argument that Bell's malicious prosecution claim rendered the preliminary hearing transcripts relevant is persuasive.

Bell also argues that a transcript of proceedings before the Court on September 14, 2010, was also not necessary because Defendants were present in court. Defendants argue the transcript was necessary to file an objection to Bell's motion that was before the Court. But the Court granted Bell's motion. Defendants did not assert any objection during the status hearing, nor did they later file an objection. This cost, therefore, was not reasonable. Defendants' request for costs for this hearing transcript in the amount of $14.55 is denied.

Defendants' request for $90 in "delivery charges" is also denied. Messenger and delivery services are frequently deemed ordinary business expenses and not recoverable

as costs. *See Telular Corp. v. Mentor Graphics Corp.*, No. 01-cv-431, 2006 WL
1722375, at *11 (N.D. Ill. June 16, 2006). Nor are these costs "*reasonably* incident" to a
cost listed as taxable under 29 U.S.C. § 1920, as the most economical method to deliver
courtesy copies is by hand or U.S. mail. *See e.g., Nat'l Prod. Workers Union Ins. Trust v.
Life Ins. Co. of North America*, No. 05-cv-5414, 2010 WL 2900325, at *4 (N.D. Ill. July
21, 2010) (denying request for costs for delivering courtesy copies to court).

Last, the largest cost that is in dispute relates to the creation of and editing by
TrialGraphix of two videos that were used as demonstrative exhibits at trial. Defendants
displayed two videos of the events of January 7, 2008: one obtained from YouTube and
another obtained from the Office of Emergency Management and Communication.
Defendants submit expenses that resulted from the process of downloading these videos
into a usable format and the subsequent "deconstruction of the video[s]" to obtain a
picture quality that would aid the jury in more clearly observing key events at issue.
(Dkt. No. 105 at 11-12.) Defendants have provided an itemized bill of these expenses
that lists ten separate items. Each item will be reviewed in turn.

In order to be compensable under 28 U.S.C. § 1920, a particular expense must fall
into one of the categories of costs statutorily authorized for reimbursement. Here, the
fees associated with preparing the trial exhibits would fall under the category of
"exemplification." *See Cefalu v. Village of Elk Grove*, 211 F.3d 416, 427-28 (7th Cir.
2000) (*Cefalu*). The Seventh Circuit adopts an expansive view of exemplification,
defining such expenses as encompassing not only graphs and charts, but also
sophisticated multi-media presentations. *Id.* Further, the court held that "[s]o long as the
means of presentation furthers the illustrative purpose of an exhibit, we believe it is

potentially compensable as exemplification." *Id.* at 428. But costs for exemplification cannot be awarded unless the Court determines that the particular exemplifications were "necessarily obtained for use in the case." *Id.* at 428 (quoting 28 U.S.C. § 1920(4)) (noting that "the district judge is uniquely suited to make that assessment."). In determining whether an exemplification expense was reasonably necessary, the Court may consider whether the exemplification was "vital to the presentation" or "merely a convenience or, worse, an extravagance." *Cefalu,* 211 F.3d at 428-429.

Defendants submit that Items 1 through 3 represent the costs of extracting the YouTube videos from the Internet into a file that Defendants could work with and use at trial. Defendants seek to recover $92.50 for digital video editing, $25 for CD creation, and $20 for local delivery charges. By contrast to the delivery charges discussed above, the delivery charge of $20 listed in item 3 was "reasonably incident" to the exemplification costs and are therefore not deemed to be ordinary business expenses. Items 1 through 3 relate to exemplification that was necessarily obtained for use in this case and are therefore awarded to Defendants. *See, e.g., Chemetall GmbH v. ZR Energy, Inc.*, No. 99-cv-4334, 2001 WL 1104604, at *30 (N.D. Ill. Sept. 18, 2001) (finding that videos used at trial were clearly necessary and "for use in this case").

Defendants submit that Items 4, 5, and 7 through 11 relate to the actual production of the demonstrative videos. Specifically, Defendants seek to recover the following costs: Item 4, Digital Video Editing ($185); Item 5, Special Effects Editing ($225); Item 7, FTP Setup Fee ($195); Item 8, Design Consultant ($1,041.25); Item 9, Pickup/Delivery – Local ($40); Item 10, Animation Computer Design ($3,710); and Item 11, Animation Art Director ($390). Bell argues that these exemplification costs were not "vital to the

9

presentation" of the demonstrative exhibits and that there was no "noticeable difference" between his videos, which were downloaded from YouTube onto a CD and that of Defendants. (Dkt. No. 108 at 4.) Items 4 and 5, which relate to video editing, were vital to the presentation of the demonstrative videos because it was necessary for Defendants to edit the hour-long video in order to delete excerpts that were not pertinent and/or redundant and to reveal only relevant portions of the video to the jury. Items 7 and 9, which relate to delivery charges, were reasonably incident to the editing of the videos.

But a Design Consultant who billed 4.25 hours at $245/hour (Item 8) and an Animation Computer Art Director who billed 2.0 hours at $195/hour (Item 10) push the boundaries of what is vital to the presentation of the demonstrative videos. So does Item 11, Animation Computer Design, which took 14 hours at a rate of $265/hour. Defendants argue that Item 10 reflects "editing, formatting, and special effects," and Items 8 and 11 reflect the editing assistance of consultants and technicians. Item 10, however, appears to be redundant of Items 4 and 5, which Defendants submit were also for "editing, formatting, and special effects." (Dkt. No. 105 at 12.) Furthermore, Defendants have not adequately explained why an "Animation Computer Art Director" or "Animation Computer Design" was necessary for the use of the video demonstratives, particularly "animation computer design" that required 14 hours to complete with respect to demonstrative videos that were extremely short in length and elementary in nature. Defendants, therefore, are denied these costs.

Defendants also request costs for Item 6, "Video Still Frame," ($720) for extracting still frames from the videos and formatting the still frames for trial. These still frames, however, were not used at trial. Defendants explain that they later "discovered

that the picture quality using the freeze-frames from the actual video was better than the stills" but "at the time the stills were made, they were designed to materially aid the jury" in understanding the events at issue." (Dkt. No. 105 at 12.) Defendants are denied this cost as these exemplifications were not "necessarily obtained for *use* in the case." *Id.* at 428 (quoting 28 U.S.C. § 1920(4)) (emphasis added). To conclude, of the ten items listed in Defendants' Trial Graphix Bill, Defendants' costs for Items 6, 8, 10, and 11 are denied; costs for the other six items are issued. Based on the Court's calculation, Defendants are awarded $895.00 ($6,756.25 — (costs for Items 6, 8, 10, and 11)) for the costs of exemplification relating to the video demonstratives.

## CONCLUSION

For the reasons set forth above, Defendants' Bill of Costs [97] is issued in part and denied in part. Defendants are awarded $6,508.38 in costs. This is calculated by subtracting from Defendants' Bill of Costs ($12,792.93) the following costs as set forth by the Court's ruling: Defendants' concession regarding attendance fees ($318.75); hearing transcript ($14.55); delivery fees ($90); and exemplification costs ($5,861.25).

Date: _6-3-11_

JOHN W. DARRAH
United States District Court Judge

11