UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BUDDY BELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 09 C 754 |
| v. | ) | |
| | ) | Judge George M. Marovich |
| | ) | |
| JAMES KEATING, CARLOS MOTA, | ) | |
| PATRICK MURRAY, and | ) | |
| THE CITY OF CHICAGO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case was recently reassigned to this Court after remand from the Seventh Circuit Court of Appeals. Plaintiff Buddy Bell has filed a motion for a new trial on damages with respect to Count IV of his original complaint. For the reasons set forth below, the Court denies the motion.

### I.   Background

On January 7, 2008, while President Bush was lunching at the Union League Club nearby, plaintiff Buddy Bell ("Bell") was participating in a protest against the war in Iraq. Bell refused an order (from Chicago police officers) to stay on the sidewalk and was arrested for disorderly conduct in violation of Subsection D of a Chicago ordinance that criminalizes an individual's behavior when he "knowingly . . . [f]ails to obey a lawful order of dispersal by a person known by him to be a peace officer under circumstances where three or more persons are committing acts of disorderly conduct in the immediate vicinity, which acts are likely to cause

substantial harm or serious inconvenience, annoyance or alarm." Chicago Municipal Ordinance 8-4-010(d) (hereinafter, "Subsection D").

On February 5, 2009, Bell filed a seven-count complaint against defendants. Bell voluntarily dismissed Counts III and V, in September 2009.

In early December 2010, Bell's first and sixth counts were tried to a jury. In Count I, Bell asserted a claim for false arrest, and, in Count VI, he asserted a claim for malicious prosecution. The jury returned a verdict in favor of defendants on both counts.[1] The jury also answered special interrogatories and concluded that the Chicago police offers had probable cause to arrest Bell for disorderly conduct under Subsection D. On December 9, 2010, the district court entered judgment in defendants' favor on Counts I and VI.

That left Bell with two counts: II and IV. In Counts II and IV, Bell asserted that Subsection D was unconstitutional. In Count II of his complaint, Bell sought relief in the form of "preliminary and permanent injunctions prohibiting [Subsection D's] enforcement," while, in Count IV of his complaint, Bell sought relief in the form of "monetary damages." (Docket entry [1] at 4 & 7).

On February 21, 2011, Bell filed what he labeled, "Plaintiff's Motion for Resolution of Claims II and IV of Plaintiff's Complaint." In the first sentence of that motion, Bell asked the court to "declar[e] the City of Chicago disorderly conduct ordinance unconstitutional and to enter a permanent injunction prohibiting the enforcement of the ordinance." (Docket entry [114] at 1). In the last sentence of the motion, plaintiff asked the court "to enter a permanent

---

[1] This verdict also resolved Bell's Count VII, which was for indemnification with respect to the malicious prosecution claim.

injunction of the enforcement of MCC 8-4-010(d)." (Docket entry [114] at 12). At no point in the motion did Bell ask the district court for money damages. On June 2, 2011, the district court issued an opinion in which it denied Bell's motion on the grounds that Bell lacked standing to request injunctive relief.

On June 22, 2011, Bell filed a notice of appeal. In the notice, Bell stated that he was appealing the district court's June 2, 2011 decision. Bell did not appeal the jury verdict.

On October 7, 2011, Bell filed his opening brief with the Seventh Circuit Court of Appeals. In his jurisdictional statement, Bell stated that he was "seeking a reversal of the district court's order of June 2, 2011," which had "resolved all remaining claims against all parties, resulting in a final judgment." In his statement of the case, Bell noted that "the jury rejected his false arrest and malicious prosecutions claims, finding that there was probable cause to arrest him under Subsection (d)" and that he "does not challenge this finding on appeal." In his appellate briefs, Bell did not ask for a remand for a new trial on damages. He asked the Seventh Circuit merely to "remand to the district court with instructions to enter a permanent injunction against the enforcement of the ordinance."

On appeal, the Seventh Circuit first considered whether Bell had standing to seek injunctive relief. Here are excerpts from the Seventh Circuit's analysis:

> When the plaintiff applies for prospective relief against a harm not yet suffered–or one he believes he will suffer again–he must establish that he 'is immediately in danger of sustaining some direct injury as the result of the challenged official conduct[,] and [that] the injury or threat of injury [is] both real and immediate, not conjectural or hypothetical. . . .
>
> As a general matter, a plaintiff who wishes to engage in conduct protected by the Constitution, but proscribed by a statute, successfully demonstrates an immediate risk of injury. The existence of the statute constitutes the government's commitment to prosecute in accordance with it and, thus, a concrete

prospect of future harm for one who would flout it. Accordingly, when a plaintiff expresses a credible intention to disobey a statute, a sufficient likelihood of injury exists, and a pre-enforcement challenge is appropriate. He need not wait to be arrested to bring suit for injunctive relief.

We distinguish claims where a statute criminalizes the plaintiff's conduct or desired conduct from those where the plaintiff seeks relief from the defendant's criminal or unconstitutional behavior. For the latter type of claim, the putative injury typically proves too remote or attenuated to sustain our jurisdiction under Article III. The same logic obtains when a statute was or would have to be misapplied to justify the plaintiff's arrest. In *Shirmer v. Nagode* [621 F.3d 581, 583 (7th Cir. 2010)], . . .[w]e held that the plaintiffs lacked standing to facially challenge Subsection D or pursue injunctive relief because the law 'c[ould not] fairly be read to prohibit [the conduct in which the plaintiff had engaged] and concluded that the police's 'clear misuse of the law d[id] not provide a basis for a federal court to explore that law's facial constitutionality.'"

(Slip Op. at 5-7) (internal citations omitted). The Seventh Circuit, thus, distinguished *Schirmer* (on which the district court had relied in concluding that Bell lacking standing to pursue injunctive relief), because Bell was not relying on the misapplication of a law to show that he would be injured if he engaged in the same conduct again. Rather, if he engaged in the same conduct again, his conduct would violate the ordinance. Thus, the Seventh Circuit concluded that Bell had standing to seek injunctive relief. (Slip Op. at 8).

The Seventh Circuit went on to consider the constitutionality of Subsection D, which criminalizes an individual's behavior when he "knowingly . . . [f]ails to obey a lawful order of dispersal by a person known by him to be a peace officer under circumstances where three or more persons are committing acts of disorderly conduct in the immediate vicinity, which acts are likely to cause *substantial harm or serious inconvenience, annoyance or alarm*." Subsection D (emphasis added). The Seventh Circuit found that Subsection D is valid up through the words "substantial harm" but that the remainder of the ordinance (i.e., the words "serious

inconvenience, annoyance or alarm") is unconstitutional. The Seventh Circuit reversed and remanded the case to the district court. The mandate issued October 2, 2012.

The district judge held a status hearing with the parties on October 4, 2012. The district judge asked the parties whether Bell was entitled to a new trial. The defendants' counsel said no, as did one of plaintiff's attorneys. Another of plaintiff's attorney said yes. When it became clear to the district judge that Bell's attorneys had not discussed with Bell the issue of another trial, the district judge encouraged Bell's attorneys to ask Bell whether he wanted a new trial and to file a motion for a new trial if: a) Bell wanted a new trial; and b) the attorneys could advocate for a new trial without violating Rule 11. On October 18, 2012, the district judge entered an injunction against the enforcement of those portions of Subsection D that the Seventh Circuit had declared unconstitutional.

Bell filed a motion for a new trial on damages. By the time the motion was fully briefed in December 2012, the case had been reassigned to this Court.

## II. Discussion

Bell argues that he is entitled to a new trial to determine his damages with respect to Count IV. "New" is an odd way to phrase his request for a jury trial on Count IV, because that implies that Count IV was already tried to a jury. It was not. The Counts that were tried to the jury were Counts I (for false arrest) and VI (for malicious prosecution).

It is important to understand what Bell is not requesting. Bell is not requesting a new trial on his false arrest and malicious prosecution claims. Nor could he, because he did not appeal the jury's verdict. *See Rosario v. Livaditis*, 963 F.2d 1013, 1022 (7th Cir. 1992) (refusing to grant new trial on issue that was not appealed). Here, it is clear that Bell did not challenge on
-5-

appeal the jury's verdict on Counts I and VI, because he did not mention the jury's verdict in his notice of appeal and because he explicitly stated in his appellate brief that he was not challenging the jury's verdict on appeal. Thus, it is not surprising that Bell is not asking for a new trial on Counts I (false arrest) and VI (malicious prosecution).

What Bell asks for instead is a jury trial on damages for Count IV, which is one of the two counts that were still pending after the jury's verdict in this case. As Bell points out, in Counts II and IV of his original complaint, he challenged the constitutionality of Subsection D. In Count IV, unlike in Count II (in which Bell requested injunctive relief), Bell requested money damages. Bell argues that, because he requested money damages in his original complaint for Count IV and never got them the first time around, he should get a trial on those damages now that the case has been remanded. The question, then, is whether Bell's original request for damages in Count IV is still alive on remand.

The Seventh Circuit has explained:

> There are two major limitations on the scope of a remand. First, any issue that could have been but was not raised on appeal is waived and thus not remanded. *See United States v. Morris*, 259 F.3d 894, 898 (7th Cir. 2001) ("[P]arties cannot use the accident of remand as an opportunity to reopen waived issues."); *United States v. Parker*, 101 F.3d 527, 528 (7th Cir. 1996) ("A party cannot use the accident of a remand to raise in a second appeal an issue that he could just as well have raised in the first appeal."); *see also Barrow v. Falck*, 11 F.3d 729, 730 (7th Cir. 1993) ("An argument bypassed by the litigants, and therefore not presented in the court of appeals, may not be resurrected on remand and used as a reason to disregard the court of appeals' decision."). Second, any issue conclusively decided by this court on the first appeal is not remanded.

*United States v. Husband*, 312 F.3d 247, 250-51 (7th Cir. 2002).

Defendants argue that Bell abandoned and waived his request for damages in Count IV of his original complaint. This Court agrees.

Bell abandoned his request for damages for Count IV by failing to pursue it at the district court the first time around. Bell had a number of opportunities to pursue that claim at the district court, but he repeatedly took actions that make it clear he did not want to pursue the claim. For example, if Bell believed he was entitled to damages on Count IV, he should have asked the district court for damages when he asked the district court to rule on that claim. When (on February 21, 2011), Bell filed his "Motion for Resolution of Claims II and IV of Plaintiff's Complaint," he should have asked the district court not just for injunctive relief but also for money damages. He did not. Instead, he asked only for injunctive relief.

Because Bell asked the district court only for injunctive relief, the district court considered only whether Bell had standing to pursue injunctive relief and not whether Bell had standing to pursue money damages. Presumably, Bell had standing to pursue money damages even if, as the district court concluded (wrongly, as it turned out), he did not have standing to pursue injunctive relief. *Friends of the Earth, Inc. v. Laidlaw Environmental Serv., Inc.*, 528 U.S. 167, 185 (2000) ("[Defendant] is right to insist that a plaintiff must demonstrate standing separately for each form of relief sought. *See Lyons*, 461 U.S. 95, 109 (1983) (notwithstanding the fact that plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief.)"). If, as Bell asserts, his claim for money damages in Count IV was still alive, then, after the district court decided Bell lacked standing to obtain injunctive relief, Bell should have taken that opportunity to inform the district court that he had another claim pending (Count IV for damages). He could have, for example, filed a motion (for reconsideration) to explain to the district court that it still had jurisdiction to consider Bell's request for money damages. Bell did not do so.

Instead, Bell filed a notice of appeal. He then filed his opening brief and, in the jurisdictional statement, stated that the district court's June 22, 2011 order had "resolved all remaining claims against all parties, resulting in a final judgment." By filing a notice of appeal and telling the appellate court that he was appealing a final order, Bell was, in essence, saying that the district court had already ruled on all of his claims. That was an admission that Bell was no longer pursuing money damages in Count IV, i.e., that he had abandoned that claim.

Perhaps, though, Bell (wrongly) thought that when the district court concluded it lacked jurisdiction over Bell's claim for injunctive relief, it was also saying it had no jurisdiction to grant Bell money damages. (This, of course, would have been a bad assumption, because Bell had never asked the district court for money damages.) If that were Bell's position, then, on appeal, Bell should have argued to the Seventh Circuit that the district court had erred by not finding that Bell had standing to pursue his request for money damages and in not considering his claim for money damages. Bell should have asked the Seventh Circuit to remand the case not just for an injunction but also for money damages. Bell did not do so. All Bell asked the Seventh Circuit for (with respect to remedies) was a remand so the district court could enter an injunction. The Seventh Circuit gave Bell what he asked for. Upon remand, the district court entered the injunction.

That leaves nothing left to do in this case. Bell abandoned his original claim for money damages in Count IV, and he cannot use the accident of remand to revive it now. *See Eason v. Thaler*, 73 F.3d 1322, 1329 (5th Cir. 1996) ("[Plaintiff] included an allegation relating to the November 20 gas leak in his original complaint; he did not, however, raise this issue in his

original appeal to this Court. We hold that the district court exceeded the scope of the remand in addressing this abandoned issue.").

## III. Conclusion

For the reasons set forth above, the Court denies Bell's motion for a new trial.

ENTER:

_George M. Marovich_
George M. Marovich
United States District Judge

DATED: January 18, 2013